## STATE *against* PETER WHITE.

<div style="margin-left: margin">

A bailee of goods, who has the qualified possession of them, is guilty of larceny in privately cloigning and converting them.

</div>

INDICTMENT for larceny.

The indictment charged the defendant, that at *Middlebury*, on the 25th of *December*, A. D. 1802, *vi et armis*, he stole, took, and carried away seven yards of muslin, a portmanteau, and sundry other chattels, principally tin ware, of the proper goods and chattels of *Thomas Clerk*, then and there being found, &c. *contra formam statuti.*

Trial by Jury.

It appeared in evidence, that *Thomas Clerk* was a tin manufacturer, and had hired the prisoner to work at his trade as a journeyman; that *Clerk* went a journey, and left his shop in the care of the defendant, under the superintendence of his brother *Samuel Clerk*, who on account of the prisoner's ill conduct in being frequently intoxicated in his brother's absence, dismissed him and shut up the shop. On *Thomas Clerk's* return the goods were discovered to be missing, the prisoner was pursued, overtaken in *Cornwall*, and the goods found in his custody.

The defence attempted to be made was, that the eloigning the goods was only a breach of trust in the prisoner; that he could be no trespasser in the eloigning, he having received the goods by consent of the owner, and if no trespass in taking, there could be no *theft*, as without a tortious taking there can be no larceny.

·TYLER, Assistant Judge.    After the repeated decisions of the Court upon this point, the present defence is certainly unexpected.

So long since as the year 1530, this doctrine has been abrogated in *England* by the statute of *Henry* VIII. c. 7. which in the preamble recites, " That divers persons had upon confidence and trust delivered unto their servants their caskets and other jewels, money, goods and chattels, safely to keep to the use of the said masters, &c. and that they had afterwards withdrawn themselves, and had gone away with the same or part thereof, to their own use, and *that it was doubtful whether this were felony ·or not at common law:*" and then enacts, ".that all and singular such servants, (being of the age of eighteen, and not apprentices,) to whom any such caskets, &c. shall be delivered to keep, that if any such servant or servants withdraw him or them from their said masters or mistresses, and go away with the said caskets; &c. or any part thereof, with intent to steal the same, and defraud his or their said masters or mistresses thereof, contrary to the trust and confidence in him or them put by his or their said masters or mistresses, or else being in the service of his said master or mistress, without their assent or command, he embezzle the same caskets, &c. or any part. thereof, or

otherwise convert the same to his own use, with like purpose, &c. if the caskets, &c. shall be of the value of 40s. or above, then the same false, fraudulent and untrue act or demeanor from thenceforth shall be deemed and adjudged felony." And although, through the peculiar regard which the *English* Judges pay to the letter of the statutes, this act was not extended to journeymen embezzling the goods of their masters, yet since the making of that statute it has ever been considered, that a journeymen or servant who takes his master's goods with an intent to steal them, is guilty of felony at common law.

A distinction in more modern times seems to be made between delivering the *property*, or the qualified *possession, being the care of goods,* to any one. If the *property be actually delivered,* there can indeed be no tortious taking; but if the mere qualified possession *or care* of the goods is only delivered, there may be a tortious taking, and it is committed the instant the bailee privily converts the goods to a purpose not comprehended in the implied or special contract on which the qualified possession or care of the goods was made.

It appears to me, that if this defence is pursued, the sole question to the Jury must be, whether the prisoner took the goods with a design to steal them, which, indeed, from the goods being found in his custody on his apprehension while on flight, can scarcely be questioned.

JACOB, Assistant Judge. It appears to me, that if the doctrine that the eloigning goods by a bailee is not a larceny, but a breach of trust, were well founded, it could not apply in this case, for it is in evidence

that the prisoner had been discharged from his master's service by the brother, who was his agent to superintend his business in his absence. Upon the prisoner's discharge, all right of possession had then ceased in the prisoner.

Chief Judge. If the prisoner's counsel insist, let this defence be urged to the Jury, and the Court will state the law as it is. In a criminal prosecution I had rather err through *indulgence* than *rigour*.

*Miller*, counsel for the prisoner, said, he should not press the defence any further, as he had learned from the State Attorney that he had witnesses in Court to prove the taking of some of the chattels mentioned in the indictment, which were not delivered by the owner to the charge of the prisoner.

Verdict guilty.

*Daniel Chipman*, for the State.
*Samuel Miller*, for the prisoner.